Mr. Justice CLIFFORD
 

 delivered the opinion of the court.
 

 Statutes of limitations exist in all the States, and with few exceptions they have been copied from the one brought here by our ancestors in colonial times.
 
 †
 
 They are regarded as statutes of repose arising from the lapse of time and the antiquity of transactions, and they also proceed upon the presumption that claims are extinguished whenever they are not litigated in the proper forum within the prescribed period.
 

 
 *250
 
 Exceptions are to be found in all such statutes; but cases where the courts of j ustice were closed in consequence of insurrection or rebellion are not within the express terms of any such exception, contained either in the original act or any other of later date.
 

 Express exceptions of the kind, it is conceded, do not .exist, and if none can be implied, then all debts due from one belligerent to another, as well as executory contracts .involving commercial intercourse with the enemy, are practically discharged, as, if the war is of much duration, prior claims will be barred by the local statute of limitations.
 

 Enemy creditors cannot prosecute their claims subsequent to the commencement of hostilities, as the rule is universal and peremptory that they are totally incapable of sustaining any contract in the tribunals of the other belligerent.
 

 Absolute suspension of the right to sue and prohibition to exercise it exist during the war by the law of nations, but the restoration of peace removes the disability and opens the doors of the courts.
 
 *
 

 Peace, it is said, restores the right and the remedy, but it cannot restore the remedy if the war is of much duration, unless it be held that the operation of the statute of limitations is also suspended -during the period the creditor is prohibited by the existence of the war and the law of nations from enforcing his claim.
 

 On the twenty-seventh of July, 1868, the plaintiffs in the .court below commenced an action of assumpsit against the ■present plaintiff on three promissory notes, signed at New York and made payable at New Orleans. One, dated August 6, I860, due six months after date, for sixteen hundred and eighteen T6C55 dollars; another, dated August 23, 1860, due six months after date, for fourteen hundred and fifteen T559n dollars; and the other, dated August 20, 1860, due six months after date, for four hundred and forty-two 75575 dollars, all of which notes, at maturity, were duly presented for
 
 *251
 
 payment, which being refused, they were duly protested for non-payment. Process was duly issued, and being served, the defendant appeared and pleaded as a defence the prescription of five years as established by the civil code of the State.
 

 New facts alleged by the defendant in his answer are considered as denied by the plaintiff’ in the State courts without any replication, and the same' rules of practice have been adopted in the Circuit Courts. Matters in avoidance, therefore, alleged in' the answer, are open to every objection of law and fact the same as if specially pleaded.
 
 *
 

 Viewed in that light, as the pleadings must be, the issue between the parties was the same as it would be in jurisdictions governed by the common law, where the plaintiff’replied denying the allegations of the answer, or pleaded specially that the operation of the prescription was suspended during the late civil war, and that the plaintiff did commence his suit within five years next after the cause of action accrued.
 
 †
 

 Testimony was taken and the parties were heard, but the court, neither party requesting a jury, overruled the plea of prescription, and entered judgment for the plaintiffs. Subsequent to the judgment a statement of facts was filed, signed by the judge and the parties, which consists of the pleadings, the notes and documents offered in evidence, the entries in the minutes of the proceedings, the judgment of the court, together with a statement of the evidence introduced. By the statement it appears that the defendant, at the dates at which the notes were given, and when they matured, resided at Bayou Sara, and that he continued to reside there during the war of the rebellion; that he had an agent in New Orleans during that period, and that he made one or two visits there towards the close of the war; that the plaintiffs resided throughout that period in the city
 
 *252
 
 of New York; that oa the 4th of March, 3868, they brought a suit for the same cause of action; that the defendant made a compromise and settlement of the same with the attorney who instituted the suit, whereby the suit, on the eighth of May following, was discontinued; that the attorney, in- making the settlement and in discontinuing the suit, acted without authority, and that the plaintiffs repudiated his acts in the case as soon as they were informed of the same, and after-wards brought the present suit.
 

 Exceptions were taken by the defendant to the rulings and decision of the court upon three grounds, as follows: (1.) Because the bringing of the first suit did not interrupt the prescription established by the laws of the State. (2.) Because the civil war did not interrupt the prescription under the rule established by the decisions of the Supreme Court of the State. (3.) Because the courts of the United States are bound to follow the decisions of the Supreme Court of the State in respect to the law of prescription, as applied to such causes of action.
 

 Different views, however, were entertained by the Circuit Court, and j udgment w'as rendered for the plaintiffs. Whereupon the defendant sued out a writ of error and removed the cause into this court.
 

 Much discussion of the first response made by the plaintiffs to the defence of prescription as set up by the defendant in his answer is unnecessary, as the court is of the opinion that the decision of the case must turn upon the second response of the plaintiffs to that defence, which is, that in computing the five years since the cause of action accrued the period during which the courts of the State where the defendant resided were closed in consequence of the late civil war must be deducted.
 

 Regulations exist in some of the States that where a first suit is abated and a second suit is brought within a prescribed time the statute of limitation shall cease to run from the date of the first suit, but the court is not referred to any such enactment as applicable in this case, and it is believed that none such exists, as the code of the State provides that
 
 *253
 
 if tlie plaintiff, after having made his demand, abandons or discontinues it, the interruption shall be considered as h'aving never happened.
 
 *
 

 Grant all that, still the question remains to be considered whether the alleged prescription was not interrupted by the fact that the courts of the State where the defendant resided were closed by the late civil war for such a period of time that the bar ivas not complete when the present suit was commenced.
 

 Proclamation of blockade was made by the President on the nineteenth of April, 1861, and on the thirteenth of July in the same year Congress passed a law authorizing the President to interdict all trade and intercourse between the inhabitants of the States in insurrection and the rest of the United States.
 
 †
 

 On the twentieth of August, 1866, the President by his proclamation of that date proclaimed that the insurrection was at an end and that peace, order, and tranquillity were fully restored in all the States.
 
 ‡
 

 Permanent military possession of New Orleans, it is conceded, was taken by our forces at a much earlier period, and it is also true that the Circuit Court was organized there at the date specified in the statement of facts, but that portion of the State where the defendant resided still remained within the lines of the insurrectionists, and of course the courts of the State were closed so far as respects the rights of the plaintiffs in this case.
 
 §
 

 Throughout the entire period between the dates of those proclamations the courts of the State were closed to the plaintiffs and they were totally incapable of instituting any suit for the enforcement of their claim.
 
 ǁ
 

 Exceptions, not mentioned in the statute of limitations,
 
 *254
 
 have sometimes been admitted, and this court decided in the case of
 
 Hanger
 
 v.
 
 Abbott,
 

 *
 

 that the time during which the courts of the States in rebellion were closed to the citizens of the rest of the Union is to be excluded in suits, since brought, from the computation of the time fisled by the statutes of limitation within which suits may be brought, though no such exception is expressly admitted in the limitation act. • Neither laches nor fraud can be imputed to the creditor in such a case, as the inability to sue becomes absolute by the declaration of war wholly irrespective of his consent or opposition. When the contract was made he was competent to sue, but the effect of war is to suspend his right during its continuance,.not only without any fault on the pai’t of the creditor, but under circumstances which make it his duty to abstain from any such attempt. His remedy, as was said in that case, is suspended by the two governments and by the law of nations not applicable at the date of the contract, and which comes into operation in consequence of an event over which he has no. control.†
 

 Recent decisions of the' Supreme Court of the State are referred to by the defendant in which it is denied that any exception whatever is allowed in any case, in the law of prescription, as to bills and notes.‡
 

 None of those decisions are founded upon any express enactment, and the reasons assigned for the conclusion are not satisfactory. They admit that the maxim
 
 “ contra non valentem agere non carrit preseriptio”
 
 is a maxim of universal justice, but deny that it applies to causes of action founded upon, bills and notes, chiefly because “ they are prescriptible. against minors and interdicted persons as well as others,” •which the chief justice of that court, in the case first cited, held to be an unsatisfactory reason for the conclusion, and in that view the court here entirely concurs.
 

 Suppose that the rule of that court cannot be adopted,
 
 *255
 
 still it is insisted by the defendant that the suspension of the prescription ceased when the rebellion came to an end; that the suit was instituted too late, as it might have been commenced within five years next after the cause of action accrued, and certain continental authorities are referred to where that rule is apparently maintained.
 
 *
 

 Authorities of the kind, though entitled to great respect, are not obligatory, and the court is of the opinion that the rule adopted in the case of
 
 Hanger
 
 v. Abbott,
 
 †
 
 is more consonant with justice and more in accordance with the analogies of our law than the one suggested by those commentators.
 

 Even the Supreme Court of the State which refused to adopt that rule admits that the law ought to be so, but proceeds to show from certain prior decisions of this court that it is not so, not one of which is an authority to support the proposition for which they were invoked.
 

 Evidently the case before the court is controlled by the decision in the case of
 
 Hanger
 
 v.
 
 Abbott
 
 and
 
 The Protector
 

 ‡
 

 and the court as now constituted adheres to those decisions.
 

 Creditors’ debts due from belligerents are suspended during war, but the debts are not annulled. They are precluded during war from suing to recover their dues, but with the return of peace we return the right and the remedy.
 
 §
 

 Where a debt has not been confiscated during war the rule is now universally acknowledged that the right to sue revives when peace is restored, and the rule is that the restoration of peace returns to the creditor both the remedy and the right, which necessarily implies that the law of limitation was suspended during the same period.
 

 Judgment affirmed.
 

 
 *256
 
 Note. — The four cases which now immediately follow, to wit,
 
 Garnett
 
 v.
 
 United States, McVeigh
 
 v.
 
 Same, Miller
 
 v.
 
 Same, and Tyler
 
 v.
 
 Defrees,
 
 arose under two certain acts of Congress passed in 1861 and 1862, during the late rebellion, and popularly known as the Confiscation Acts. Along with one or two others they were argued at the last term; but after being taken into advisement, were at the close of it ordered to be re-argued at this. They were now fully argued very much together. In the first of them nothing relating to confiscation was reached; the case going off on a point of jurisdiction. In the judgment in none of them did the Chief Justice or Mr. Justice Nelson participate; both being absent from the court from the causes mentioned in the memoranda of the Term.
 

 The Protector, 9 Id. 689.
 

 Rabel
 
 v.
 
 Pourciau, 20 Louisiana Annual, 131; Lemon
 
 v.
 
 West, 20 Id. 427; Smith
 
 v.
 
 Stewart et al., 21 Id. 75.
 

 †
 

 Story, Conflict of Laws, § 576.
 

 *
 

 The William Bagaley, 5 Wallace, 405; Jecker et al.
 
 v.
 
 Montgomery, 18 Howard, 111; The Hoop, 1 Robinson, 200.
 

 *
 

 Daquin v. Coiron, 3 Louisiana, 392; Muse v. Yarborough, 11 Id. 533; Swilley
 
 v.
 
 Low, 13 Louisiana Annual, 412; Bank v. Allard, 8 Martin, N. S. 141.
 

 †
 

 Biley v. Wilcox, 12 Robinson’s Louisiana, 648; Code, article 329.
 

 *
 

 Codo, article 3485.
 

 †
 

 12 Stat. at Large, 257-258.
 

 ‡
 

 United States v. Anderson, 9 Wallace, 70; 14 Stat. at Large, App. 7.
 

 §
 

 The Venice, 2 Wallace, 258.
 

 ǁ
 

 The Hoop, 1 Robinson, 200; Wheaton’s Law of Nations, by Lawrence, 544, 877; Esposito
 
 v.
 
 Bowden, 4 Ellis & Blackburne, 963; Griswold
 
 v.
 
 Waddington, 16 Johnson, 438.
 

 *
 

 6 Wallace, 532.
 

 *
 

 2 Troplong, De la Prescription, 258, &c.
 

 †
 

 6 Wallace, 534.
 

 ‡
 

 9 Id. 687.
 

 §
 

 Chitty on C. and M. 423; Wheaton’s Law of Nations, by Lawrence, 541 ¡ Yattel, book iii, c. 6,
 
 §
 
 77.