## LYNCHBURG COTTON MILL CO. v. TRAVELERS' INS. CO.

(Circuit Court, W. D. Virginia. September 25, 1905.)

INSURANCE—ACTION ON POLICY—LIMITATION BY CONTRACT.

A clause in an insurance policy, providing that an action thereon shall be barred, unless commenced within 30 days after the right of action accrues, creates a contract limitation analogous to a statutory limitation, and conduct of the company, inducing delay in bringing suit beyond such time for the stated purpose of enabling it to investigate the claim or to negotiate for a settlement, while a waiver of such delay, is to be given only the effect intended and understood by the insured, and is not an entire abandonment or annulment of the limitation clause, but merely suspends its operation; and the limitation begins to run on a clear announcement by the company of its refusal to pay or settle the claim.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 1544–1556.]

Harrison & Long, for plaintiff.

P. H. C. Cabell and Caskie & Coleman, for defendant.

McDOWELL, District Judge. This was an action of assumpsit founded on what is known as an "employers' liability" policy of insurance. The plaintiff, a corporation having its office at Lynchburg, Va., having in force a policy of the nature indicated, was sued by one Stanley, its employé, for damages. Stanley recovered judgment. A writ of error was sued out, and the judgment below was affirmed in the latter part of March, 1904. The plaintiff paid the judgment on April 15, 1904, notified the insurance company of this fact, and in effect then demanded reimbursement under the policy. A considerable cor-

respondence ensued between the plaintiff and the Virginia attorney of the defendant, Mr. Cabell, of Richmond, Va., the nature of which will be adverted to hereafter.

The policy, which was made a part of the declaration, contained, inter alia, the following clauses:

"*(11) This policy does not cover loss from liability for injuries to, or caused wholly or in part by, any child employed by the assured contrary to law, nor to, or caused wholly or in part by, any child so employed under 12 years of age, where no statute restricts the age of employment. * * * (14) No action shall lie against the company as respects any loss under this policy, unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue. No such action shall lie, unless brought within the period within which a claimant might sue the assured for damages, unless at the expiry of such period there is such an action pending against the assured, in which case an action may be brought against the company by the assured within 30 days after final judgment has been rendered and satisfied as above. The company does not prejudice by this clause any defenses to such action which it may be entitled to make under this policy. * * * (16) No condition or provision of this policy shall be waived or altered by any one, unless by written consent of the president, vice president, or secretary of the company; nor shall notice to any agent, nor shall knowledge possessed by any agent, or by any other person, be held to effect a waiver or change in this contract or in any part of it."

This action was instituted on October 10, 1904. To the declaration the defendant pleaded the general issue, and also specially pleaded clause 14 of the policy. The special replication reads as follows:·

"And the said plaintiff, for replication to the special plea pleaded by the defendant, says that the said defendant ought not to be admitted to plead the said plea, because it says that, before the trial of the suit of Fitzhugh Stanley against the plaintiff, the defendant questioned its liability to the plaintiff under its indemnity policy, on the ground that the said Stanley was under the requisite age of 12 years, and thereupon the said defendant, by its duly authorized agent, proposed and agreed that the investigation and determination of the said Stanley's age should be postponed until after the termination of said suit; and in conformity with said understanding the said defendant's attorney P. H. C. Cabell, advised the plaintiff on the 23d of August, 1902, that it "was not his purpose to endeavor to introduce at the trial any evidence that the boy was under 12 years of age at the time of the accident." Accordingly that question was adjourned until after the termination of said suit. And the plaintiff further says that after the termination of said suit, and upon the payment by it of the Stanley judgment, as alleged in its declaration, it made demand upon the defendant for settlement in accordance with the terms of its said policy, and the said defendant in reply, on the 21st of April, 1904, before the expiration of the 30 days mentioned in said plea as the limit in which action would lie against the said defendant, while taking the ground that the said Stanley was, in its opinion, under the age of 12 years, invited the plaintiff to "submit its views" on that question, which invitation the plaintiff understood to be extended with the expectation and intention of reaching a friendly settlement of the controversy. Again, on May 4, 1904, before the expiration of the time limit mentioned in said plea. the said defendant, through its duly authorized attorney, informed the plaintiff that, if it 'could furnish any further testimony as to Stanley's age, he would be glad to lay it before the company, as he could assure the plaintiff the company wished to meet fully the obligations that fall under its policy.'

"Thereupon, and in conformity with the original understanding between the plaintiff and the said defendant, and before the expiration of the time limit mentioned in said plea, the said defendant. acting in conjunction with the plaintiff, commenced an investigation of the age of the said Stanley, and on

the 26th of May, 1904, after the expiration of the time limit mentioned in said plea, the said defendant, by its duly authorized attorney, advised the plaintiff of its view of the result of said investigation in the following letter:

· " 'Richmond, Va., May 26, 1904.
" 'Lynchburg Cotton Mill Co. v. Fitzhugh Stanley.

" 'H. L. Moorman, Esq., President, etc., Lynchburg, Va.—Dear Sir: We have received your letter of May the 24th. I beg to say that we have made further investigation, since the decision of the Supreme Court in this case, and feel fully satisfied that Stanley was under the age limit of our policy. On the other hand, I know that you feel equally satisfied the other way. This being the case, the best I can do is to recommend to my company to meet you in a fair spirit of compromise, and, if you are disposed to have the claim settled this way, I will see the best my company is willing to do, and advise you.
" 'Very truly yours,                                    P. H. C. Cabell.'

"Again, on the 28th of May, 1904, the said defendant, by its said attorney, wrote the plaintiff as follows: 'We would be willing to pay $1,000 in settlement of all claims you may have against us in this suit. We think this a liberal proposition, and am making it rather than litigate over it again'—thus distinctly recognizing that the plaintiff had not forfeited its right to maintain this action because of the expiration of the time limit mentioned in said plea. Further negotiations proceeded between the said plaintiff and the said defendant, looking to a settlement of the said claim, and on September 8, 1904, Messrs. Blair & Tabb, State Agents of said defendant, wrote Messrs. Davis, Childs & Co., of Lynchburg, local agents of said defendant, as follows:

" 'Travelers' Insurance Company, Blair & Tabb, State Agents.
" 'Richmond, Va., Sept. 8th, 1904.

" 'Messrs. Davis, Childs & Company, Lynchburg, Va.—Gentlemen: We have yours of the 7th in regard to the Lynchburg Cotton Mill in the case of Stanley. ' We presume our company is waiting a full report from attorney Cabell before giving their final decision. We have a letter from them, under date of August 23rd, stating that they are awaiting Mr. Cabell's final report, but on account of his absence from the city, and sickness at home, we presume he has been unable to render a report. We will therefore thank you to have the Lynchburg Cotton Mill Company hold the matter in abeyance until we can give you the company's final decision. We are writing them by this mail, as per yours of the 7th inst., requesting them to hurry their decision as much as possible.
" 'Yours truly,                                    Blair & Tabb, State Agents.'

"Which letter Messrs. Davis, Childs & Co. inclosed to the said plaintiff with their letter of September 9, 1904, as follows:

" 'Lynchburg, Va., Sept. 9, 1904.

" 'Lynchburg Cotton Mill Company, Lynchburg, Va.—Dear Sirs:—We beg to herewith enclose letter from Blair & Tabb, State Agents for the Travelers' Insurance Company, in regard to the Stanley Case, which explains itself. The sickness of Mr. Cabell has delayed the matter being properly taken up, and we think it will be only a few days before the matter will be attended to, and adjusted, we trust.
" 'With best wishes, we are your friends,
" 'Davis, Childs & Company.'

"On the 16th of September, 1904, the said defendant, through its said attorney, wrote the said plaintiff, breaking off negotiations, and for the first time taking the ground that the said defendant had a valid defense to the said plaintiff's claim, because of the condition of the said policy set up in the said plea. Upon the receipt of this last communication, the plaintiff at once took steps to assert its rights, and within less than 30 days this action was instituted against the said defendant. And so the plaintiff says that it would have instituted this action within the time limit mentioned in said plea, but for the representations and conduct of the said defendant prior to the rendition of the Stanley judgment, and subsequent to its payment by the plaintiff; that said representations and conduct of the said defendant were relied upon by the plaintiff, and induced the delay on its part in

instituting this action; that it would be contrary to justice for the defendant to hold out the hope of an amicable adjustment of its liability, and thus delay the action of the plaintiff, and then be permitted to plead this very delay, caused by its course of conduct, as a defense to the action when brought; and that the said defendant is therefore estopped to rely upon the condition set up in its said plea as a bar to the plaintiff's said action.

"Wherefore the said plaintiff prays judgment if the said defendant ought to be admitted to its said plea contrary to its own representations and conduct.

"Lynchburg Cotton Mill Co., by Counsel.

"Harrison & Long, P. Q."

This replication omits some important correspondence, which was subsequently introduced in evidence. At the conclusion of the evidence for the plaintiff, the defendant moved that the jury be instructed to find for the defendant, and this motion was granted.

Without expressing an opinion on the subject, it may for our present purposes be assumed that the letters from Mr. Cabell furnished ground for the contention that up to August 16, 1904, the defendant was estopped to claim the benefit of the 30-day limitation in clause 14 of the policy. On that date the plaintiff received the following letter:

"Aug. 16th, 1904.

"Stanley v. Lynchburg Cotton Mills.

"H. L. Moorman, President, Lynchburg Cotton Mills, Lynchburg, Va.—Dear Sir: The company instructs me to say that it cannot consider your proposition to settle this case, and further instructs me to withdraw the offer we have already made, as we feel satisfied that this claim is not covered under our policy. -

"Very truly yours,                                          P. H. C. Cabell."

There was an effort made by plaintiff to show that after the receipt of this letter the defendant so conducted itself as to continue in force the estoppel until within less than 30 days prior to the institution of this action. It is sufficient to say here that this effort was unsuccessful. The agents whose acts are relied on were not authorized, and no admissible evidence was offered to show that the defendant ratified or knew of the said acts of said agents. In the oral argument on the motion to direct a verdict, counsel for plaintiff contended that, having shown acts by the defendant creating an estoppel during the running of the 30 days next following the payment of the Stanley judgment, and continuing in force until the expiration of said period, the benefit of the limitation was thereby finally and permanently lost to the defendant. Counsel for defendant contended that at the utmost the operation of the limitation was only suspended during the negotiations, and that the letter of August 16th, supra, finally ended all negotiations, and made it the duty of plaintiff, either to sue within the next ensuing 30 days, or to show further matter of estoppel continuing to have effect until within 30 days of the institution of the action. It is with this question alone that I shall deal, and I am assuming, without so deciding, that the defendant, commencing immediately after notice that the plaintiff had paid the Stanley judgment, and until August 16, 1904, waived its right to insist on the 30-day limitation.

Counsel for plaintiff rely strongly on the case of Semmes v. Ins. Co., 13 Wall. 158, 20 L. Ed. 490. But that case seems to me to differ from the case at bar so much as to deprive it of force here. In that case

the clause in the insurance policy sought to be taken advantage of read:

"No suit or action shall be sustainable, unless commenced within the time of 12 months next after the loss shall occur, and, in case such action shall be commenced after the expiration of 12 months next after such loss, the lapse of time shall be taken and deemed as conclusive evidence against the validity of the claim."

Some months after the loss, the Civil War commenced. The action was not instituted until such length of time after the end of the war that the period between the loss and the commencement of the war, and the period between the end of the war and the institution of the action, added together, exceeded 12 months. The plaintiff was during all the time a citizen of Mississippi, and the defendant a citizen of Connecticut. The defendant pleaded the clause of the contract above quoted, and the plaintiff in reply set up the obstruction to suit caused by the war. The lower court on these pleadings gave judgment for the defendant. The Supreme Court reversed this judgment.

In the case at bar the Stanley suit was pending until a few days prior to the payment of that judgment by the plaintiff here. Consequently, if there had been no estoppel, the period of limitation set out in the policy at bar would have commenced to run on the day of said payment. As I read clause 14 of the policy, it bars suit, if not commenced within said period of 30 days. And in this respect the case at bar differs from the Semmes case. There is a brief but instructive discussion in 4 Minor's Inst. (3d Ed.) 605 et seq., of the controversy as to the true policy on which statutes of limitation are founded. I quote very briefly:

"Lord Mansfield conceived that the statute was founded on a statutory presumption of satisfaction, at least, in the case of demands for money in the nature of debts. * * * Lord Chief Justice Best conceived that the statute of limitations was intended by the Legislature as a statute of repose. * * *"

To the effect that Chief Justice Best's view has been adopted quite generally. See 19 Am. & Eng. Ency. (2d Ed.) 146.

That the Supreme Court had at the date of the Semmes case adopted and never wholly departed from the exact view taken by Chief Justice Best is not asserted. But that Justice Miller (who wrote the opinion in the Semmes case) had a clear-cut, distinct opinion as to the policy on which statutes of limitation are founded, and that his view was that such policy was one of repose, and not one based on a presumption of satisfaction or other invalidity, appears from his opinion in Public Schools v. Walker, 9 Wall. 282, 288, 19 L. Ed. 650. He said:

"If it be treated as a statute of limitation, it is not the doctrine on which such statutes are founded that lapse of time proves the wrongfulness of the claim. They are made for the repose of society, and the protection of those who may, in that time, have lost their means of defense. It is a mere declaration of the lawmaking power to the plaintiff that, having voluntarily slept so long upon his rights, he shall not now be permitted to assert them, to the injury of individuals and the disturbance of society."

And in this case the question presented was as thus stated:

"We must inquire whether the fact that Brazeau had failed to assert his claim within the time limited by Congress proved that his claim was not rightful."

No one can read the opinion in the Semmes case (written two years later) without, as it seems to me, perceiving that Mr. Justice Miller still considered statutes of limitation as founded on a policy of repose; that is, as constituting a bar to suit without reference to any presumption of invalidity in the obligation sued on. It is also equally apparent that he drew a sharp distinction between statutes of limitation and the stipulation in the Semmes policy. The decision is based expressly on the ground that the stipulation was that failure to sue was to be taken as evidence against the validity of the claim. Under the view of the policy underlying statutes of limitation taken by Justice Miller, the lapse of time beyond the statutory period does not create any presumption against the validity of the claim, but bars the action, because public policy requires that no action shall be brought on claims of a certain staleness. The insurance company in the Semmes case had not stipulated that failure to sue for the period named should bar the action (as defendant in the case at bar has done), but had merely stipulated that such delay should be taken as conclusive evidence against the validity of the claim. As the intervention of a state of war prevented the action, it was with entire consistency said that the plaintiff's delay did not raise any presumption, conclusive or otherwise, against the validity of plaintiff's claim. The language of Mr. Justice Miller is (page 161, 13 Wall., 20 L. Ed. 490):

"So, also, if the plaintiff shows any reason which in law rebuts the presumption which, on the failure to sue within 12 months, is by the contract made conclusive against the validity of the claim, that presumption is not revived again by the contract. It would seem that, when once rebutted fully, nothing but a presumption of law or presumption of fact could again revive it. There is nothing in the contract which does it, and we know of no such presumption of law."

I have thus dwelt upon the opinion in the Semmes case, not only because of the insistence of counsel for plaintiff that it settles the question before us; but also because of a belief on my part that some of the state courts, in cases to be cited hereafter, have misconceived the effect of that opinion. Some of the state courts have held the Semmes case to be authority for the position that no contract limitation is analogous to a statutory limitation. The error which seems to me to exist here is in not discriminating between contract limitations which bar the action, and a contract stipulation, such as that in the Semmes case, which, by its express terms, merely raises a presumption of invalidity from lapse of time. Where the contract limitation is so expressed as to show the same intent as that shown by, or ascribed to, the Legislature in enacting a statute of limitation, no reason occurs to me for drawing a distinction. In the case at bar the insurance company has so drafted its clause of limitation as to make it quite analogous to a statutory limitation. Indeed, it is not impossible that this form of stipulation was adopted with full knowledge of the Semmes opinion, and for the very purpose of avoiding the result reached by the court in that case.

The conclusion I reach as to the Semmes case is that it is not an authority against the contention of the defendant in the case at bar. Indeed, it seems to me that, if in that case the stipulation had read as does the one in the case at bar, Mr. Justice Miller would have been of opinion to affirm the lower court. If the stipulation in that case had been that delay in bringing suit should bar the action, it would seem that Mr. Justice Miller would have reasoned that the intent of the insurance company was to secure repose; and that, by analogy to cases where obstructions prevent suit within a period fixed by statutes of limitation, the running of the contract limitation should be held merely suspended by the Civil War, as would be the running of a statutory limitation. Or, if Mr. Justice Miller had held the Lord Mansfield view, that statutes of limitation are founded solely on a presumption of invalidity, it seems very probable that he would also in this event have been of opinion to affirm the lower court, because of the analogy betwen the stipulation in the Semmes policy and statutes of limitation, when supposed to be based entirely on a presumption of invalidity.

The only argument against the soundness of the distinction which I draw between the Semmes case and the case at bar that occurs to me would be drawn from the possibility that some of the members of the court who concurred in that decision held the Lord Mansfield view of the intent shown by statutes of limitation. If so, such members of the court unadvisedly concurred in Justice Miller's conclusion. But, so far as I have had time to investigate the question, I do not find that any member of the court, as constituted when the Semmes case was decided, held the opinion that statutes of limitation are founded solely on a presumption of invalidity. Long prior to the Semmes case, Mr. Justice Story (after having assented, in Beatty v. Burns, 8 Cranch. 108, 3 L. Ed. 500, to the proposition that statutes of limitation are "emphatically statutes of repose") had expressed the opinion that statutes of limitation are founded on a policy of repose, and also on a presumption of satisfaction. Bell v. Morrison, 1 Pet. 351, 360, 7 L. Ed. 174. Justices Clifford, Strong, and Field, associates of Justice Miller, respectively, in Levy v. Stewart, 11 Wall. 244, 249, 20 L. Ed. 86, in U. S. v. Wiley, 11 Wall. 513, 514, 20 L. Ed. 211, and in Riddlesbarger v. Ins. Co., 7 Wall. 390, 19 L. Ed. 257, had given expression to a belief in this double reason for the enactment of such statutes. Justice Swayne, in Leffingwell v. Warren, 2 Black, 606, 17 L. Ed. 261, declared statutes of limitations to be statutes of repose. But I have not found that any of Justice Miller's associates considered such statutes to be founded solely on a presumption of invalidity.

It is not difficult to show that Justices Clifford, Strong, and Field advisedly and consistently concurred in Justice Miller's conclusion in the Semmes case. The limitation in the Semmes policy was inserted by the insurance company for its own benefit. Any doubt as to the intent shown thereby had to be decided against the insurance company. The intent shown by the clause was that lapse of time should raise (a conclusive) presumption against the validity of the claim of the insured. If there was any intent to secure repose, to bar the action merely because of delay in suing, such intent at the utmost had to be

raised by most doubtful implication. The two rules of construction—"expressio unius" and "contra proferentem"—clearly prevented the clause from being read as showing both these intents. Holding the view that they did as to the two intents shown by statutes of limitation, it is obvious that Justices Clifford, Strong, and Field could not have held the Semmes contract to be similar or analogous to a statutory limitation.

So far as I am advised, there is no binding decision of the question now under consideration. Each side has cited some more or less persuasive authorities. No attempt will be made to cite a full list of these authorities. As to those supporting, or tending to support, the contention of the insurance company, it is sufficient to mention Vette v. Clinton Ins. Co. (C. C.) 30 Fed. 668; Steel v. Phenix Ins. Co., 51 Fed. 715, 2 C. C. A. 463; 1 Wood, Lim. (2d Ed.) pp. 100, 102, and cases there cited; Killips v. Ins. Co., 28 Wis. 472, 9 Am. Rep. 513, 514; note Little v. Phœnix Ins. Co., 25 Am. Rep. 106, 107. Of the authorities relied on by counsel for the plaintiff, I shall mention only those that seem to me to be most pertinent. They are: Ill. Ins. Co. v. Baker (Ill.) 28 N. E. 627; Galloway v. Standard Ins. Co. (W. Va.) 31 S. E. 969; Earnshaw v. Sun Ins. Co., 68 Md. 465, 12 Atl. 884, 6 Am. St. Rep. 460, 465 Of the Maryland case it is to be noticed that the court regards the opinion in the Semmes case as drawing a distinction between statutory limitations and all contract limitations, and seems to base the decision on this supposed distinction. The West Virginia case also relies on this supposed distinction, and it was moreover treated as a case in which a promise to pay by the insurer was the act which waived the limitation.

I shall not pause to discuss the difference between a new promise to pay and a mere request that suit be temporarily deferred. In the case at bar, on the whole of the evidence, I think that the utmost that can be successfully contended is that Mr. Cabell in effect requested that suit be not brought until he could investigate Stanley's age and reach a conclusion on that point satisfactory to his company. After this investigation had been made, there was an offer of compromise (which presupposes a probability of future litigation, if not accepted) and a counter proposition of compromise, all of which treaties were, as I regard it, brought to an end on August 16, 1904. Throughout the entire correspondence, the possibility that litigation might be necessary to settle the rights of the parties seems to have been recognized.

The question before us is "at large" and must be settled according to the view that is most reasonable. It has already appeared that I regard the stipulation here as a contract limitation, which is quite analogous to a statutory limitation. In Vette v. Clinton Ins. Co. (C. C.) 30 Fed. 668, the language of the policy was:

"That no suit or action * * * shall be sustainable * * * unless such suit or action shall have been commenced within six months after the loss shall have occurred."

Judge Thayer said:

"The clause in question is a special statute of limitations, created by contract between the parties. * * *"

It is clear that it makes no difference what view may be taken of the policy to be ascribed to the Legislature in enacting statutes of limitation. The stipulation at bar is so expressed as to make it exactly equivalent to a private "statute of limitation." If the analogy between the limitation in the policy at bar and the ordinary statutory limitation is perfect, the inference seems irresistible that the effect of the limitation is in justice and in reason merely suspended by a temporary obstruction to suit, or by acts of the insurer which should have only temporarily induced the insured to delay bringing suit. It is true that statutory laws on the subject of limitation usually expressly provide that delays caused by the defendant shall suspend the running of the limitation. But such provisos are, I think, merely in affirmation of pre-existing doctrines of law derived from the principles of equitable estoppel. To the effect that acts of a defendant, causing the plaintiff to delay suit, which are not embraced in the statute law, may be relied on as suspending the running of the statutory limitation both at law and in equity. See 4 Minor's Insts. (3d Ed.) 623, and the numerous authorities there cited; Wood v. Carpenter, 101 U. S. 135, 139, 25 L. Ed. 807.

But, whether the above-mentioned analogy be perfect or not, I think the same conclusion must in reason be reached without regard to the analogy. The theory of implied waiver in cases such as this, which is, I think, the same as estoppel in pais (16 Am. & Eng. Ency. [2d. Ed.] 935), is that the party claiming the benefit of the waiver or estoppel has a right to draw reasonable inferences from the words or acts of his adversary, and that the adversary be required to abide the fair result of such inferences. The law of estoppel in pais comes from equity. It arises from the righteousness of insisting upon "fair play." There can then be little or no reason in carrying the estoppel beyond the effect which the party claiming its benefit reasonably gave, or should have given, to the acts creating the estoppel. In the case at bar there was never an unconditional promise by the insurance company to pay the claim. As before said, a request for a temporary delay in bringing suit may have been inferred from the letters of Mr. Cabell. But this is the utmost that could reasonably have been inferred. No reason occurs to me why the insurance company should have intended to abandon and surrender for all time the benefit of the limitation. A mere desire for time in which to investigate the question as to Stanley's age, or for time to consider compromising the dispute, seems a very insufficient consideration for the absolute and permanent abandonment of so important a right as is that given it by the 30-day limitation. And no good reason suggests itself why the insured should have supposed that so important a right was intended to be absolutely and finally abandoned, when a mere temporary suspension answered every purpose of either party.

There is no doubt but that the parties could have expressly agreed that the operation of the limitation clause should be temporarily suspended. If so, I see no reason why an implied agreement to the same effect should not be created by, or deduced from, acts or words which reasonably import nothing more than such an implied agree-

ment.  It is true the contract does not contain any stipulation concerning any delay other than that between April 15 and May 15, 1904. But a state of affairs has arisen, concerning which the parties have not expressly contracted.  The right on the part of the insured to avoid the effect of the delay between the two dates mentioned above arises wholly from a doctrine of law which is distinctly equitable in character.  It seems reasonable, therefore, to apply a doctrine similarly equitable in character to the contention of the insured that greater effect must be given the acts of estoppel than it itself did give, or could reasonably have given, to said acts.

If I am right in thinking that the reasonable inference that should have been drawn by the insured from Mr. Cabell's letters was that the operation of the limitation clause was to be only temporarily held in abeyance, then surely no principle of law requires the court to hold that these letters had the effect of finally and forever abrogating the operation of that clause.  And I am strengthened in my belief of the soundness of this view by the testimony showing the construction put on Mr. Cabell's letters by the insured.  Until August 16, 1904, the insured did not sue, but on receipt of Mr. Cabell's letter of that date (copied hereinabove) the president of the mill company testified that he decided to sue.  And it was evidently only the request of an unauthorized local agent of the insurance company that suit be deferred until another effort at compromise could be made that again caused the mill company to delay the bringing of the action.

It is argued that Mr. Cabell's letter of August 16, 1904, is not sufficient to fairly notify the mill company that it might have to meet, when its case was tried, a contention that suit must be brought within 30 days from that date.  In the first place, Mr. Cabell did not, as it seems to me, have to anticipate that the mill company would seek to reopen negotiations with another agent, and delay more than 30 days from the receipt of his letter before instituting suit.  Again, the mill company, in order to avoid the effect of its failure to sue by May 15, 1904, must rely on the implication, if reasonably drawn from Mr. Cabell's letters, that the insurance company tacitly requested that suit be delayed.  The letter of August 16th was not only on its face a perfectly unequivocal and final withdrawal of such tacit request, but it seems clearly to have thus been construed by the president of the mill company.

Counsel for plaintiff cited some authorities, to the effect that an insurance company, after a loss, will, by insisting on one only of several possible defenses, lose its right to afterwards rely on any other. No good reason suggests itself for discussing such cases in detail. They are, after all, necessarily based on the theory of equitable estoppel, or quasi equitable estoppel, and raise no question, in this case, other than that which has been considered.