AMERICAN TOBACCO CO. et al. v. PEOPLE'S TOBACCO CO., Limited.

(Circuit Court of Appeals, Fifth Circuit. April 12, 1913.)

No. 2,372.

LIMITATION OF ACTIONS (§ 100*)—DISCOVERY OF CONSPIRACY—ANTI-TRUST ACT—VIOLATION.

Where plaintiff sued defendants for conspiracy, consisting of an alleged unlawful agreement to injure plaintiff in its business, in violation of the Sherman Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), the period of limitation did not begin to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

run until plaintiff discovered the existence of the conspiracy and its cause of action.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 823, 480–493; Dec. Dig. § 100.*]

In Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Action by the People's Tobacco Company, Limited, against the American Tobacco Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Junius Parker, of New York City, and George Denegre, Joseph Paxton Blair, and W. S. Parkerson, all of New Orleans, La., for plaintiffs in error.

Edwin T. Merrick and Ralph J. Schwarz, both of New Orleans, La., for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge. This is a suit by the People's Tobacco Company, Limited, against the American Tobacco Company, Augustus Craft, and the Craft Tobacco Company, which was brought under the act of Congress of July 2, 1890, known as the "Sherman Anti-Trust Act" (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]). The suit was for damages alleged to have been sustained by the plaintiff below, the defendant in error here, by reason of an unlawful agreement on the part of the defendant companies and Augustus Craft, who, it is also alleged, conspired to injure the People's Tobacco Company in its business. There was a verdict and judgment for the plaintiff.

It is unnecessary to go into the character of the action or the questions involved on the merits of the case to any great extent, because the recovery in the District Court as to the liability and the amount is not questioned here. The judgment, which recites the amount of the verdict, and is for three times the amount of the same and for counsel fees, is as follows:

"Considering the verdict of the jury rendered in this cause on March 30, 1912, wherein the jury found in favor of the plaintiff and against the defendants, in solido, in the sum of $8,728.06, and considering the law in such cases made and provided (Act of Congress approved July 2, 1890), it is ordered, adjudged, and decreed that the plaintiff, the People's Tobacco Company, do have and recover of and from the defendants, the American Tobacco Company, Augustus Craft, and the Craft Tobacco Company, Limited, in solido, the sum of $26,184.18, being three times the amount of the said verdict rendered on March 30, 1912, by the jury herein, together with interest thereon at the rate of 5 per cent. per annum from the date of this judgment. It is further ordered, adjudged, and decreed, in accordance with the act of Congress as aforesaid, that the plaintiff, the People's Tobacco Company, do have and recover of and from the defendants, the American Tobacco Company, Augustus Craft and the Craft Tobacco Company, Limited, in solido, the sum of $5,000 as reasonable attorney's fees herein allowed by the court to plaintiff in this cause. It is further ordered, adjudged, and decreed that said defendants be condemned to pay all the costs of this suit."

The only question made on this writ of error is whether the suit was brought in time, the defendants pleading the prescription of one year under the law of Louisiana, and it is conceded that that is the prescribed time for such actions in Louisiana.

The original petition which commenced this proceeding was filed January 30, 1908, and it is claimed that the first knowledge the plaintiff had of the fact that the American Tobacco Company was interested with Augustus Craft and the Craft Tobacco Company in the business which resulted in the injury to the plaintiff was in December, 1907. It is claimed by the plaintiff that the time when it became aware of the fact that the American Tobacco Company had combined with Augustus Craft and the Craft Tobacco Company to injure it in its business is the period from which the prescription began to run. The contention here, on the part of the People's Tobacco Company, as we understand it, is that the combination and conspiracy between the American Tobacco Company, Augustus Craft, and the Craft Tobacco Company was concealed by the latter companies, or, at least, that their business operations and their methods were of such character that they concealed themselves, and that such concealment would prevent the running of the statute.

The question of prescription here was made in several ways by the defendants in the court below, by their requests to charge, which were refused by the court. They are properly certified, making the question here clearly and specifically as to whether prescription began to run before the fact of the concerted action on the part of the American Tobacco Company, Augustus Craft, and the Craft Tobacco Company was discovered by or became known to the People's Tobacco Company. The charge of the court on this question of prescription was as follows:

"When you have gotten that far, if you first decide the case on the question of conspiracy, approached the question of damages, and have determined that the petitioner is entitled to damages, then there is another question of fact for you to determine, and that relates to the defense of prescription. It is the law of Louisiana that acts, such as these, are prescribed in one year after they occur. But it is also the law that this prescription is suspended, has not effect or operation, during such period as the party injured does not know that he has been injured and is unable to bring a suit. That means, gentlemen, that it begins to run from the moment or the day that the petitioner knows that he has suffered an actionable injury. That does not mean that it would begin to run if he merely knew his profits were falling off, or he knew they were falling off from the competition of the Craft Tobacco Company; but it would begin to run if he knew that the falling off or damage was caused by the competition to effect and in pursuance of an illegal combination in restraint of trade. In other words, from the moment he knew he could bring an action against somebody to recover his damages, although he might not have known who the person was, or he might not have known how he was going to prove his action, prescription would run, and after the lapse of one year his right of action would be barred. Therefore it is a question of fact for you to determine, in connection with this case, whether or not the plaintiff knew, or ought to have known, more than a year before this petition was filed, that he had suffered an actionable injury. The petition was filed on the 30th day of January, 1908, the citation was served the same day on all the defendants, and the allegation in the petition is that he did not know of this combination or its operation against him until the 10th of December, 1907, which, of course, is within one year.

So, if you find the allegation in his petition is correct, and is not offset by the evidence, or not disproved by the evidence, you will pay no further attention to the question of prescription."

Taking this charge as a whole, we think it fairly presents the question of prescription in this case. The particular language which we think renders the charge sound, if it is otherwise subject to criticism, is this:

"Therefore it is a question of fact for you to determine, in connection with this case, whether or not the plaintiff knew, or ought to have known, more than one year before this petition was filed, that he had suffered an actionable injury."

The court then proceeds to state that the petition was filed in January, 1908, and that the plaintiff alleges he did not know of the combination and its operation against him until December, 1907, clearly indicating, and saying to the jury, and so they must have understood, that if the plaintiff knew, or could have known, more than a year before the filing of its petition, of this unlawful combination against it, the plea of prescription would be good. The view of the court, as indicated by the charge, was that prescription did not begin to run until the People's Tobacco Company knew, or ought to have known, of the agreement or arrangement called "a combination or conspiracy" on the part of the other tobacco companies against it. While it might have known that its profits were falling off, and that the competition of the Craft Tobacco Company was causing this, this could not give it a cause of action under the provisions of the Sherman Law, and until it discovered that it had a right of action prescription would not commence to run. We think this states substantially the law of the case, and is the correct view of the question of prescription.

Much of the argument here has been directed to the question as to whether the maxim "contra non valentem agere non currit prescriptio" is now a part of the jurisprudence of the state of Louisiana. The decisions of the Supreme Court of Louisiana are conflicting, and there might well be doubt, under those decisions alone, as to what is the correct view of this. In Levy v. Stewart, 11 Wall. 244, 20 L. Ed. 86, however, which was a case from Louisiana, reference is made in the opinion by Mr. Justice Clifford to the law of Louisiana on this subject, and especially to the maxim "contra non valentem," etc., as follows:

"Recent decisions of the Supreme Court of the state are referred to by the defendant, in which it is denied that any exception whatever is allowed in any case, in the law of prescription, as to bills and notes. None of those decisions are founded upon any express enactment, and the reasons assigned for the conclusion are not satisfactory. They admit that the maxim 'contra non valentem agere non currit prescriptio' is a maxim of universal justice, but deny that it applies to causes of action founded upon bills and notes, chiefly because 'they are prescriptible against minors and interdicted persons as well as others,' which the Chief Justice of the court, in the case first cited, held to be an unsatisfactory reason for the conclusion, and in that view the court here entirely concurs."

This would seem to indicate that the Supreme Court of the United States recognizes the correctness of those decisions of the Supreme Court of Louisiana which consider this maxim still a part of the jurisprudence of that state.

In Bailey v. Glover, 21 Wall. 342, 22 L. Ed. 636, in the opinion by Mr. Justice Miller, this is said:

"In suits in equity, where relief is sought on the ground of fraud, the authorities are without conflict in support of the doctrine that where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief provided suit is brought within proper time after the discovery of the fraud. We also think that in suits in equity the decided weight of authority is in favor of the proposition that, where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or effort on the part of the party committing the fraud to conceal it from the knowledge of the other party."

Afterward in the opinion the following is added:

"But we are of opinion, as already stated, that the weight of judicial authority, both in this country and in England, is in favor of the application of the rule to suits at law as well as in equity. And we are also of opinion that this is founded on a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent frauds—to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself, until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits tried on the common-law side of the court's calendar as to those on the equity side."

This case of Bailey v. Glover has since been frequently recognized in decisions by the Supreme Court and other United States courts. In Traer v. Clews, 115 U. S. 528, 6 Sup. Ct. 155, 29 L. Ed. 467, the court, in discussing the question involved here as to the suspension of the statute of limitations, where the facts on which the case was based had been concealed, said (115 U. S. 538, 6 Sup. Ct. 159, 29 L. Ed. 467):

"The case of Bailey v. Glover has never been overruled, doubted, or modified by this court."

Many other authorities to the same effect might be cited, but the foregoing are considered sufficient to establish the principle which must control here.

It is stated in this case, however, that the question of fraud or concealment of facts upon which the case is founded was not made in the District Court, or presented to the jury by the court. We do not think this material here. The fact of a combination and conspiracy between the American Tobacco Company, Augustus Craft, and the Craft Tobacco Company had already been established in this case, and also the amount which the plaintiff was entitled to recover, embracing threefold damages and attorney's fees. The judge, in his charge, fixed the time when prescription should commence to run as the date of the discovery of the fact of the concerted action by the two defendant companies and Craft. It must be borne in mind that the course of the wrongful conduct, injurious to the plaintiff, was all this time concealed from the plaintiff, and this conduct and this concealment must nec-

essarily be considered as a fraud on the plaintiff. The court, in its charge, evidently assumed that, if the jury had found that the plaintiff was not entitled to damages, it would be unnecessary for it to consider the question of prescription at all. Indeed, such is indicated in the charge itself. But if it found damages for the plaintiff, making the consideration of the question of prescription necessary, then they would have already found such conduct on the part of the defendants as would amount to a fraud on the plaintiff, and all it was then necessary for it to consider was when the plaintiff first ascertained the facts which formed the basis for the charge of fraud.

It is said, however, that the only purpose for concealing the connection between the American Tobacco Company and Augustus Craft and the Craft Tobacco Company was that the American Tobacco Company was on the "unfair list" of organized labor, and that if its connection with the Craft Tobacco Company became known it would bring about a boycott by union labor of the Craft Tobacco Company. The fact of the concealment of the combination between the American and the Craft Tobacco Companies and Craft is none the less a concealment, as we see it, so far as the suspension of the running of the statute against the People's Tobacco Company is concerned. It is the lack of knowledge of the facts which would give it a cause of action, and its inability for that reason to bring suit, that tolls the statute.

It must be borne in mind all the time that the questions of combination and conspiracy between the two defendant companies and Craft to injure the plaintiff's business, and of the plaintiff's damages and the amount it is entitled to recover of defendants, have been settled in this case; also that it has been adjudged that there was a combination against the People's Tobacco Company, of which it did not know until within the prescriptive period. Why should not the prescriptive period in this case commence at the time the combination against the plaintiff was discovered? The Sherman Act gives the right to an action for conspiracy to injure the business of the plaintiff, such as was alleged, and such as we must consider to have been established in this case. No action could be brought by the plaintiff until he had knowledge of the facts which gave him a cause of action. We think the court below was right in holding as it did on this question.

This being the only question for consideration here, for the reasons given, the judgment must be affirmed.