OPINION.
Drake, Ch. J.,
delivered the opinion of the court:
On the 22d of May, 1871, a petition was filed in this court in favor of John Randolph, administrator of Franklin S. Whitney, late of Claiborne County, Mississippi, who, by the affidavit of his widow, Mattie S. Whitney, filed in support of the motion now to be disposed of, died in September, 1866.
On the 17th of September, 1871, that petition was withdrawn' from the files of the court by the attorneys for the claimant, and has never since been returned; and we are therefore entirely in the dark as to the cause of action which it set up, and as to any allegation contained in it.
Z. O. Robbins succeeded Randolph in the administration on the decedent’s estate, and on the 13th of December, 1871, filed an amended petition; claiming $272,800, for 786 bales of cotton, alleged to have been sold by his intestate to agents of the Treasury Department. The material allegations of the petition are as follows:
That in the year 1863 he [Whitney] had in his possession and owned in Claiborne County, State of Mississippi, seven hundred and eighty-six (786) bales of cotton, which he sold and delivered in different lots and amounts, and at different times during the years 1863 and 1864, to agents of the United States Treasury Department, for and at the rate of seventy-five cents per pound, payable in part at the time of the delivery of the cotton, and the balance after said cotton should have been sold by direction of the Treasury Dex>artment, and the net proceeds thereof paid over to the Secretary of the Treasury. The persons to whom said cotton was so sold and delivered were at the time publicly known to be acting as agents of the Treasury Department in collecting up and receiving cotton for and on behalf of the United States, and they claimed at the time to have and in fact had due authority from the Government to purchase and receive said cotton. The said cotton so sold was delivered in part at Natchez, on which *21 there was paid said Whitney as the advance payment the sum of $4,700; and the remainder of the cotton was delivered at New Orleans, on which there was paid in like manner the amount of $3,500. The said cotton so sold and delivered was in good condition, and weighed from four hundred and fifty to five hundred pounds to the hale. On the delivery of said cotton as aforesaid, receipts and vouchers were taken from said agents of the Treasury Department, specifying the amount of the cotton and the terms of the sale, &c.
That said receipts and vouchers were all placed in the hands of General Davidson, the military commandant of the post in that section of the country at the time, and were, on the imperative orders of General Canhy, in the exercise of military authority, given up to a Major L’Hommedieu, hy whom the said papers were taken to New Orleans and delivered over to the president of a court-martial or military commission, to he used as evidence before said court or commission on the trial of certain agents of the Government hy that tribunal. And the said receipts and vouchers were never afterwards returned to said Whitney; and although the most vigilant efforts were used hy him, and in his behalf, to get hack and recover said receipts and vouchers, he was never able to recover the same or to get copies thereof. And whether said receipts and vouchers were lost or destroyed hy some person connected with said court-martial or military commission, or whether they were sent to the War or the Treasury Department, and are still in existence among the files of papers in the possession of the Government, it was found impossible for said Whitney, or those acting in his behalf, with the utmost vigilance, to astertain; wherefore petitioner invokes the authority of the Court of Claims to obtain from the Departments the said receipts and vouchers, if they are in existence among the x>apers of the Government, hut if they are not to be found, petitioner asks that secondary evidence may he received to prove their content^
From the date-of the filing of this petition till the 8th of May, 1876, no step whatever appears to have been taken toward establishing the claim so set forth; and on that day the case was dismissed for want of prosecution.
Z. C. Eobbins was succeeded in the administration by Mattie S. Whitney, the decedent’s widow, who, in December. 1882, moved the court to vacate the order dismissing the petition, and reinstate the case on the docket; and in support of her motion, she presents an affidavit made by herself, the material parts of which are as follows:
At the beginning of the late war my husband and I resided in Claiborne County, Mississippi, and were persons of wealth. We lived in comfort on one of Mr. Whitney’s plantations. We were Union people, but we were unable to give any aid to the Union cause until the army commanded by Gen. Grant entered that part of Mississippi where we lived, on its way to Vicksburgh. Prom that time to-the close of the war we extended all possible aid and comfort to the Union cause. My husband was an invalid, and physically unable to serve in the army. When Gen. MaePherson left Mis *22 sissippi to join Gen. Sherman in the march, to the sea, he left with Gen. H. W. Slocum, who succeeded him, a list of about ten persons in Mississippi, on whom he could rely for information and assistance. Mr. Whitney’s name and my own were on that list. This I learned from Gen. Slocum himself, and we did render him important assistance afterwards; and, among other things, gave him information of an intended night attack upon his command, which enabled him to he in entire readiness for it.
During the movements of contending armies across our land we lost substantially all our personal property, except the cotton mentioned in the amended petition on file in this case. After my husband’s death I removed with my children to the North, and I have since supported my family with the utmost difficulty. I had no funds to furnish my husband’s administrator with the means to prosecute this claim, and there were no funds in the estate for that purpose, or indeed for any other. For this reason no testimony was taken, and the petition was at some time, to me unknown, dismissed for the waut of prosecution.
I have recently ascertained this fact. I had no knowledge of the application to dismiss the petition, nor any knowledge that it had been granted until recently.
As the administrator appointed by the Orphans’ Court had taken no steps to prosecute the claim, and had allowed it, without any notice to me, to be dismissed for want of prosecution, 1 requested him to resign. This he did, and I have since, upon the petition of my children and myself, been appointed administratrix of tbe estate of the late Franklin S. Whitney, deceased, in his place and stead.
In support of ber statement of ber pecuniary inability to meet the necessary expenses of obtaining testimony in tbe case she files two other affidavits.
To those who are acquainted with the disposition of this court to give to claimants every fair opportunity to establish their claims, it need not be said that if there were no question involved in this motion but that of reinstating a case which had failed of prosecution because of the poverty of the parties interested, we should go as far as could be reasonably expected to sustain such a motion as this. But such a consideration»as that is not at all the only one that should influence our action. In every such case we deem it to be our province and our duty to look into the petition and ascertain whether under it a judgment against the Government could be rendered. In Garcia’s Case (14 0. 01s. B., 121) we held that whatever ground there might be for reinstating the case, if the case were one of which the court might take jurisdiction, we cannot consider any such ground where the petition shows that the claim is one of which we cannot take cognizance. This rule applies in the present instance, as will now he shown.
*23 Tbe petition — wbieb was sworn to by the widow of Whitney. now, as his administratrix, the claimant — discloses a-claim based on alleged sales of cotton, made in the years 1863’ and 1864, by Whitney to agents of the Treasury Department,, who, it is alleged, had due authority to purchase and receive-the cotton. Of course, Ihe first thing to be done in support of any such claim is to point to "some act of Congress authorizing-the appointment of agents with power to make such purchases. To this end we are referred to section 8 of the Act of July 2, 1864 (13 Stat. L., 377, ch. 225), which is in these terms:
That it shall he lawful for the Secretary of the Treasury, with the approval of the President, to authorize agents to purchase for the United States any products of States declared in insurrection, at such places therein as shall he designated hy him, at such prices as shall he agreed on with the seller, not exceeding the market value thereof at the place of delivery, nor exceeding three-fourths of the market value thereof in the city of New York at the latest quotations known to the agent purchasing.
It will be observed that under this provision agents were to be appointed “in States declared in insurrection, at such places therein as shall be designated by the Secretary of the Treasury.”
It is particularly noticeable, too, that the petition does not give the names of the persons who are alleged to have been agents, nor the places at which they were aeting as such; nor does it aver in totidem verbis that the cotton was sold in Claiborne County, Mississippi; but such is the clear inference deducible from the language used.
The petition avers that the sales were made in tbe years 1863 and 1864.
So far as the former of those years is concerned, such sales were impossible; for no law existed during the year 1863 authorizing the appointment of agents of the Treasury Department to purchase cotton anywhere.
As to the year 1864, it is equally impossible that any such sales could have been made prior to the passage of the act of July 2.
Could they have been made, in that year, after the passage of that act? That would depend on whether agents were authorized to make purchases in Claiborne County, Mississippi, in that year. Availing ourselves of the authority conferred on the court by section 1076 of the EeVised Statutes, “to call upon any of the Departments for any information it may deem neces *24 sary,” we have inquired at the Treasury Department whether, at any time during the year 1864/any agent was authorized, under said act, to make such purchases in that county; and have learned that none was in that time so authorized, nor was any agent authorized to make such purchases anywhere in the State of Mississippi in the year 1864. It is, therefore, apparently impossible that the allegation of sales by Whitney to such agents in that year could be substantiated.
Upon the face of the petition, therefore, the transactions relied on as the foundation of the claim could not have had a legal existence; and hence it would be useless to reinstate the case on the docket.
But there is another difficulty, of a higher and more insuperable nature. The claim, as set forth, is clearly barred by limitation. By section 10 of the Act of March 3, 1863. (12 Stat. L., 765, ch. 92, now Rev. Stat., § 1069), it was enacted:
That every claim against the United States, cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement of the claim be filed in the court or transmitted to it under the provisions of this act within six years after the claim first accrues: Provided, * * * That the claims of married women first accrued daring marriage, of persons under the age of twenty-one years first accruing during minority, and of idiots, lunatics, insane persons, and persons beyond seas at the time the claim accrued, entitled to the claim, shall not be barred if the petition be filed in court, or transmitted, as aforesaid, within three years after the disability has ceased; but no other disability than those enumerated shall prevent any claim from being barred, nor shall any of the said disabilities operate cumulatively.
Under the petition no claim could be proved of a later date than the last day of the year 1864.
This suit was instituted May 22, 1871.
Between the last day of 1864 and the day the suit was brought, a period of seven years, four months, and twenty-one days elapsed.
The statutory limitation began to run on the 1st of January, 1865, when the claimant’s intestate was in life, as he remained, according to the averment of the petition, until September 5, 1866. Between those two dates it bore upon this claim, and having once begun to run, no subsequently occurring disability could arrest its progress. The claim, therefore, by the claimant’s own showing in the petition, is “forever barred”; and we have no right to consider it.
The motion of the claimant is therefore overruled.