# Siplyak *v.* Davis, Director General, Appellant.

*Alien enemies—Suspension of litigation—Statute of limitations —Workmen's compensation — War — International law—Federal Act of October 6, 1917, 40 Stat. 411—Statutes—June 2, 1915, P. L. 736.*

1. A foreign or international war suspends the operation of rights of action between the citizens of the countries participating in the conflict, so long as the war continues, and on the restoration of peace all rights suspended during hostilities, or which remained dormant, are revived.

2. Where a statute limits the right to bring action to a particular period, it will not be extended by construction to include cases not within the words of the act.

3. In case of the existence of an emergency, however, such as the declaration of war, and the statute makes no provision for such emergency, it may reasonably be implied that if the legislature had had in mind such contingency, it would have made provision to meet it.

4. There is nothing in the federal legislation known as Trading with the Enemy Act of October 6, 1917, 40 Stat. 411, which, in any way, indicates an intention of Congress to change the existing law applicable to dealings between citizens of the United States and those of countries with which the United States is at war.

5. The existence of war was an implied exception to the limitation of one year in the Workmen's Compensation Act of June 2, 1915, P. L. 736.

6. A citizen of Austria may recover upon a claim under the Workmen's Compensation Act brought within one year after the end of the great war, although more than two years after the date of the accident.

Argued October 12, 1922. Appeal, No. 181, Oct. T., 1922, by defendant, from judgment of C. P. Allegheny Co., July T., 1922, No. 711, affirming decision of Workmen's Compensation Board, in case of Barbara Siplyak *v.* James C. Davis, Director General of Railroads, agent, and the Pennsylvania Railroad Co. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from decision of Workmen's Compensation Board affirming award of referee. Before MACFARLANE, J.

The opinion of the Supreme Court states the facts. Decision affirmed. Defendant appealed.

*Error assigned,* inter alia, was order, quoting it.

*Harry Z. Maxwell,* with him *Dalzell, Fisher & Dalzell,* for appellants.—Where by statute a right of action is given which did not exist by common law, and the statute giving the right fixes the time within which the right may be enforced, the time so fixed becomes a limitation on such right, and will continue, no matter in what form the action is brought: The Harrisburg, 119 U. S. 199; Kendall v. U. S., 107 U. S. 123; Davis v. Mills, 194 U. S. 451; Seagrove B. & L. Assn. v. Stockton, 148 Pa. 146; McNutt v. Bakewell, 223 Pa. 364.

The United States Supreme Court has recognized the distinction in cases arising under the Federal Employers' Liability Act of 1908: Atlantic C. L. v. Burnett, 239 U. S. 199; Sea Board Air Line v. Renn, 241 U. S. 290.

Where the statute is not merely a limitation of the remedy, but is also a limitation of the right itself, the attempt to ignore the effect of such limitation would clearly be in violation of the 14th Amendment of the federal Constitution.

The doctrine that war tolls the statute of limitations, applies only to debts: Hanger v. Abbott, 6 Wall. 532.

The Compensation Act creates the mode of procedure for the recovery of compensation thereunder, and the method provided constitutes a marked departure from any prior procedure. Such fact alone distinguishes the limitation of section 315 and renders it a limitation on the right to be strictly observed: Seagrove B. & L. Assn. v. Stockton, 148 Pa. 146.

*John Kulamer,* for appellee.—The rights of individuals residing in the warring countries, enforceable in the courts of the respective enemy countries, are suspended during the existence of the war: Hanger v. Abbott, 6 Wall. 532; U. S. v. Wiley, 11 Wall. 508; Ross v. Jones, 89 U. S. 576; Braun v. Sauerwein, 10 Wall. 218; Levy v. Stewart, 78 U. S. 244; Batesville Institute v. Kaufman, 85 U. S. 151; Semmes v. Ins. Co., 80 U. S. 158.

Whether a limitation in a statute is a matter of right or a condition or merely a remedy, the entire act must be considered and the intention of the legislature ascertained: Seagrove B. & L. Assn. v. Stockton, 148 Pa. 146.

OPINION BY MR. JUSTICE FRAZER, January 3, 1923:

Plaintiff's husband received injuries while engaged in his employment by defendant as a crossing watchman, resulting in his death on May 19, 1919. Deceased, though residing in this country, was a citizen of Austria-Hungary, and at the time of the accident, plaintiff resided in Austria, having gone there with her children in 1914. Claim for compensation was not made until July 20, 1921, more than two years after the date of the accident, but less than a year after the treaty of peace between the United States and Austria was ratified, about October 8, 1920. The right to compensation was denied, inter alia, under section 315 of the Workmen's Compensation Act of 1915, P. L. 736, which provides that, "In cases of death, all claims for compensation shall be forever barred......unless, within one year after the death, one of the parties shall have filed a petition as provided in article IV hereof." Plaintiff claimed the existence of a state of war between the United States and Austria suspended the statute of limitations and that its provisions did not again take effect until the ratification of peace between the two countries, while, on the other hand, defendant, though admitting war suspends the running of the statute in ordinary commerical transactions, contends the Workmen's Compensation Act

creates a new liability and the limitation for enforcing such liability is not merely a limitation of the remedy but a limitation on the right itself, consequently, no cause of action existed and for that reason the statutory provision was not complied with. The referee awarded in favor of claimant, and the compensation board, on a hearing de novo, sustained the award. The court below, on appeal, concluded the Workmen's Compensation Act did not create a new right but merely relieved the workman from the necessity of proving negligence in attempting to enforce an existing right and was thus a limitation upon the remedy which the war suspended, and dismissed the appeal. From that order of the court below defendant appealed.

It has long been an established principle of law that a foreign or international war suspends the operation of rights of action between the citizens of the countries participating in the conflict, so long as the war continues and on the restoration of peace all rights suspended during hostilities, or which remained dormant, are revived. This rule is based on the fact that the immediate and necessary consequence of a declaration of war is to prohibit intercourse or dealings between the subjects of belligerent states or countries. After hostilities are once begun, any attempt at trading with the enemy country on the part of subjects of either country, unless by permission of the government, is prohibited and becomes ipso facto a breach of the allegiance due to their respective governments and as such is forbidden. If the running of the statute of limitations was not suspended during such period and the war of sufficient duration it would be within the power of debtors in one country, following the restoration of peace, to defraud creditors in the other country of their just claim. An interesting discussion of the subject is found in Hanger v. Abbott, 73 U. S. 532, 536, where it was said: "In former times the right to confiscate debts was admitted as an acknowledged doctrine of the law of nations, and in strictness it

may still be said to exist, but it may well be considered as a naked and impolitic right, condemned by the enlightened conscience and judgment of modern times. Better opinion is that executed contracts, such as the debt in this case, although existing prior to the war, are not annulled or extinguished, but the remedy is only suspended, which is a necessary conclusion, on account of the inability of an alien enemy to sue or to sustain, in the language of the civilians, a persona standi in judicio........

"We suspend the right of the enemy, says Mr. Chitty, to the debts which our traders owe to him, but we do not annul the right. We preclude him, during war, from suing to recover his due, for we are not to send treasure abroad for the direct supply of our enemies in their attempt to destroy us, but with the return of peace we return the right and the remedy. During war, says Sir William Scott, there is a total inability to sustain any contract by an appeal to the tribunals of the one country on the part of the subjects of the other. Views of Mr. Wheaton are, and they are undoubtedly correct, that debts previously contracted between the respective subjects, though the remedy for their recovery is suspended during war, are revived on the restoration of peace, unless actually confiscated in the meantime in the rigorous exercise of the strict rights of war, contrary to the milder rules of recent times. He says in effect that the power of confiscating such debts theoretically exists, though it is seldom or never practically exerted; that the right of the creditor to sue for the recovery of the debt is not extinguished, that it is only suspended during the war, and revives in full force on the restoration of peace."

The court further says, on page 538: "Where a debt has not been confiscated, the rule is undoubted that the right to sue revives on the restoration of peace, and Mr. Chitty says that with the return of peace we return to the creditor the right and the remedy. Unless we return

the remedy with the right the pretense of restoring the latter is a mockery, as the power to exercise it with effect is gone by lapse of time during which both the right and the remedy were suspended."

In the present case, section 315 of the Workmen's Compensation Act specifically provides that all claims "shall be forever barred" unless claim is made within the time and in the manner stated. The general rule is that where the statute makes no exception, the courts can make none (Murray v. Chicago N. W. R. R., 92 Fed. 868) and where the statute limits the right to bring action to a particular period it will not be extended by construction to include cases not within the words of the act: Helbig v. Ins. Co., 234 Ill. 251; The Harrisburg, 119 U. S. 199. Accordingly, it has been held that in cases of this character where the statute gives a right of action for debt, the court cannot add a saving clause or create an exception if the statute contains none, and matters tending to delay the general statute of limitation, such as infancy, absence from the state and similar causes, will not support an action brought under the statute after the limitation has expired: Stern v. La Compagnie General Transatlantique, 110 Fed. 996. This rule is consistent with the theory that it is the province of the legislature to designate what shall operate as an exception to the statute and the court cannot extend the act to apply to cases for which it was not intended or exclude from its operation cases clearly within its provisions.

A further principle, however, is recognized by the courts which is applicable to the present proceeding. In case of the existence of an emergency, such as the declaration of war, and the statute makes no provision for such emergency, it may be reasonably implied that if the legislature had had in mind such contingency it would have made provision to meet it. This implied suspension of the statute may be justified on the ground of public necessity due to the fact, for example, that during the existence of war a total inability exists on the part of

the citizens of the belligerent countries to carry on business intercourse with each other and necessarily an absolute suspension of all rights and a prohibition to exercise them exists during that time and as this state of facts was brought about by circumstances over which the individual had no control, it is only fair that, on termination of hostilities and the declaration of peace, both the right and the remedy therefor should be returned to the parties.

Under the common law rule all debts and contractual rights between the subjects of the nations at war were cancelled and were subject to confiscation by the government. The original statute of limitations passed in 1623, though it made certain exceptions in favor of minors, persons non compos mentis, beyond the sea, etc., did not include in such exceptions citizens of nations at war with each other. In fact, no reason or necessity for such exception was necessary because at that time it was generally understood that all debts and property were annulled and forfeited and confiscated by the country in which the debts were owed or the property located. As the views of the civilized world gradually changed with respect to the question of confiscation of property owned by an enemy, while there was an absolute suspension of rights and remedies between citizens of the countries at war, the right of confiscation was not exercised and the practice became general to revive the rights and remedies upon the ratification of peace. A discussion of this question also is found in Hanger v. Abbott, supra, page 539, where it was said: "Cases where the courts of justice are closed in consequence of insurrection or rebellion are not within the express terms of any such exception, but the statute of limitation was passed in 1623, more than a century before it came to be understood that debts due to alien enemies were not subject to confiscation. Down to 1737, says Chancellor Kent, the opinion of jurists was in favor of the right to confiscate, and many maintained that such debts were annulled by

the declaration of war. Regarding such debts as annulled by war, the law-makers of that day never thought of making provision for the collection of the same on restoration of peace between the belligerents. Commerce and civilization have wrought great changes in the spirit of nations touching the conduct of war, and in respect to the principles of international law applicable to the subject.....Individual debts, as a general remark, are no longer the subject of confiscation and the rule is universally admitted that if not confiscated during the war, the return of peace brings with it both 'the right and the remedy.'

"Total inability on the part of an enemy creditor to sustain any contract in the tribunals of the other belligerents exists during war, but the restoration of peace removes the disability and opens the door of the courts. Absolute suspension of the right, and prohibition to exercise it, exist during war by the law of nations, and, if so, when it is clear that peace cannot bring with it the remedy if the war is of much duration, unless it also be held that the operation of the statute of limitations is also suspended during the period the creditor is prohibited, by the existence of the war and the law of nations, from enforcing his claim. Neither laches nor fraud can be imputed in such a case, and none of the reasons on which the statute is founded can possibly apply, as the disability to sue becomes absolute by the declaration of war and is a conclusion of law. Ability to sue was the status of the creditor when the contract was made, but the effect of war is to suspend the right, not only without any fault on his part, but under circumstances which make it his duty to abstain from any such attempt. His remedy is suspended by the acts of the two governments and by the law of nations, not applicable at the date of the contract, but which comes into operation in consequence of an event over which he has no control."

In Semmes v. Hartford Ins. Co., 80 U. S. 158, the fore-going principles were applied to a claim under an insur-ance policy which a statute required to be filed within one year "next after the loss shall occur" and the same doctrine is recognized in Jackson v. Fidelity & Casualty Co., 75 Fed. 359, 365, and Wall v. Robson, 2 Nott & McC. 498. In the last-named case it was said, in discussing the effect of war on the statute of limitations, pages 503-5: "If, then, it is clear and evident, both by the common law and the law of or courtesy of nations, that there is no national principle existing to bar or prevent an alien in a foreign country from recovering a just debt after the restoration of peace, shall it be said or allowed that any muncipal regulations of one of the states shall have that effect, where the general law of nations and those of foreign commerce say the contrary? I very much ques-tion the power or authority of any state or nation, at this enlightened period of the world, to pass such a law, if they were disposed to do such an act of injustice...... Is it not more consistent with reason and justice, that such rights should remain suspended, till the storm of war shall end, and peace once more smile upon and bless contending nations?"

We find nothing in the recent federal legislation, known as the Trading with the Enemy Act of October 6, 1917, 40 Stat. 411, which, in any way, indicates an in-tention of Congress to change the existing law applicable to dealings between citizens of the United States and those countries with which we were at war. On the con-trary, section 8 of that act, dealing with contracts with the enemy and providing for the suspension of the stat-ute of limitations between parties neither of whom was an enemy, or an ally of an enemy, contains the express provision that "nothing herein contained shall be con-strued to prevent the suspension of the running of the statute of limitations in all cases where such suspension would occur under existing law." Here is an express recognition of the fact that under existing laws the stat-

ute is suspended as between American citizens and the citizens of those countries with which we were at war, but would not be suspended between our citizens and the citizens of other countries, who were neither an enemy, nor an ally of an enemy, but against, or in favor of, whom the existence of war naturally made it difficult to enforce contractual or other obligations.

In view of the conclusion we have reached in this case, that the existence of war was an implied exception to the limitation provided in the Workmen's Compensation Act, we deem it unnecessary to consider the further question discussed by counsel and made the basis of the opinion of the court below, whether the limitation of time fixed by the Workmen's Compensation Act was a limitation of the liability and not merely a limitation of the remedy under the act, because in either view of that question the same result must be reached. Both the right and the remedy were suspended until the war ended; after which the parties resumed their legal status under the law as laid down in the statute, without deduction for elapsed time during the period of such suspension.

Pursuant to stipulation of counsel filed in the case, the judgment of the court below is amended as being entered against James C. Davis, Director General of Railroads, Agent, operating the Pennsylvania Railroad, and, as thus amended, the judgment is affirmed.