Arnold et al. *v.* Ellison et al., Appellants.

Argued October 3, 1928.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*John G. Kaufman,* and with him *Albert T. Bauerle,* for appellant.—The running of the statute was resumed on the date of the order of the War Trade Board, which permitted the resumption of trade: Gardiner v. Celada, 207 Pacific Reporter 875; Guinness v. Miller, 291 Fed. 768; Zimmermann v. Miller, 2 Fed. (2nd) 629; Hicks v. Guinness, 269 U. S. 71, 70 L. Ed. 168.

*Charles J. Biddle,* and with him *Dickson, Beitler & McCouch,* for appellees.—As far as the rights of the citizens of two belligerent countries are concerned, a state of war is terminated only by the exchange of ratifications of a treaty of peace by the two countries. The war with Germany ended upon the exchange of ratifications on November 11, 1921: Koswig v. Ellison & Sons, 89 Pa. Superior Ct. 208; Siplyak v. Davis, 276 Pa. 49; Garvin v. Diamond Coal & Coke Co., 278 Pa. 469; Zeliznik v. Lytle Coal Co., 82 Pa. Superior Ct. 489.

OPINION BY CUNNINGHAM, J., March 1, 1929:

Plaintiffs sued defendants in assumpsit for goods sold and delivered. After a statutory demurrer had been overruled, defendants filed a supplemental affidavit of defense averring that the claim was barred by the statute of limitations. Plaintiffs obtained a rule for judgment for want of a sufficient affidavit of defense which the court below made absolute as to the principal of the amount claimed and discharged as to items of interest. Defendants have appealed.

It appears from the pleadings that plaintiffs were in 1914 co-partners and were engaged in the business of manufacturing women's dress goods and coatings. Their principal place of business was in Germany. Defendants were and are co-partners engaged in the business of purchasing and importing such goods. Their principal place of business is in Philadelphia and they have a branch office in London.

Between March 7, 1914, and June 20, 1914, defendants placed with plaintiffs a number of orders for goods to be delivered at their London branch. The purchase prices of the goods were payable in English currency sixty days from the date of each invoice, making the first item payable June 22, 1914, and the last item payable September 20, 1914. The total amount sued for was four hundred four pounds, six shillings and six pence; converted into dollars, at the rate of $4.8665 to the pound, the claim is for $1,967.65. No part of this amount has been paid and no suit was brought until the present action was filed on October 2, 1924.

Obviously, no suit having been brought within six years from the date when the debt became demandable, the statute of limitations (Act of March 27, 1713, 1 Sm. L. 76, Sec. 1) would bar a recovery had it not been for the interruption in the running of the statute resulting from the war between Germany and the United States which began on April 6, 1917. As between the citizens of two belligerent countries, war suspends all rights of action, and during its continuance stays the running of the statute of limitations: Zeliznik v. Lytle Coal Company, 82 Pa. Superior Ct. 489. When peace is restored, private rights and remedies are revived and the statute of limitations again becomes operative.

On April 6, 1917, the statute of limitations had been running against plaintiff's oldest claim, due June 22, 1914, for two years, nine months and fourteen days,

leaving a period of three years, two months and sixteen days which must elapse before the claim would be barred. The latest claim had been due and owing for two years, six months and sixteen days and still had three years, five months and fourteen days to run. The present action was instituted, as stated, on October 2, 1924. Whether or not this was too late depends primarily upon the determination of the question when the state of war existing between this country and Germany was legally terminated, and, secondarily, upon the inquiry whether private remedies available to citizens of the two countries became actionable prior to that date.

With respect to the rights of citizens of two belligerent countries, the general rule is that a state of war is terminated only by the exchange of ratifications of a treaty of peace: United States v. Anderson, 9 Wall. 56, 70; Hijo v. U. S., 194 U. S. 315; Commercial Cable Co. v. Burleson, 255 Fed. 99, 104; Kotzias v. Tyser, [1920] 2 K. B. 69, 77. The treaty of peace between Germany and the United States was signed in Berlin by representatives of the two nations on August 25, 1921. Ratification was advised by vote of the Senate on October 18; the President ratified the treaty three days later; Germany ratified it on November 2; ratifications were exchanged at Berlin on November 11; and the treaty was proclaimed by the President on November 14, 1921. Applying the rule stated above we conclude that the war ended on November 11, 1921, the day ratifications were exchanged and the treaty went into effect. On that day the statute of limitations again became operative. Suit was brought two years, ten months and twenty-one days after the end of the war or three months and twenty-five days before the statute would have been a bar against the first item and six months and twenty-three days before the last would have been barred. This is substantially in accord with our decision in the similar case of Koswig

v. Ellison and Sons, 89 Pa. Superior Ct. 208. In that case the judgment was affirmed upon the opinion of the court below which adopted the date of the ratification by the Senate as the end of the war. Upon the facts of that case the difference between October 18 and November 11, 1921, was immaterial and we, therefore, did not deem it necessary to go into the question as between those dates. Our conclusion is also in accord with those cases in which our courts have decided that the time limit for proof of claims under the Workmen's Compensation Act must be computed, as to former enemy claimants, with reference to the date of the exchange of ratifications of the treaty of peace: Siplyak v. Davis, Director General, 276 Pa. 49; Garvin v. Diamond Coal and Coke Co., 278 Pa. 469; Zeliznik v. Lytle Coal Company, supra.

It is earnestly and ably contended in behalf of appellants that the running of the statute was resumed on July 14, 1919, the date of an order of the War Trade Board (to which we are about to refer), in which event the entire claim would be barred, or at least on July 2, 1921, the date of the Joint Resolution of Congress declaring the war at an end and also the date fixed in the President's Proclamation on November 14, 1921, of the treaty with Germany, as its effective date, in which case items of the claim aggregating $551.92 would be barred. It is proper, therefore, that we state the reasons which prevent us from adopting either of these contentions.

The order of the War Trade Board Section of the Department of State became effective July 14, 1919, and granted a general license to all persons in the United States to trade and communicate with persons residing in Germany and all other persons with whom trade and communication had been prohibited by the Trading with the Enemy Act (40 Stat. at L. 411; Comp. Stat. 1919 Supp. Sec. 3115½), with certain exceptions not important here. Appellants stake their defense

to the claim as a whole upon the proposition that, if a German national could lawfully trade with a citizen of the United States on and after July 14, 1919, it necessarily follows that he could sue in the courts of the United States for the purchase price of the goods sold. We think it was beyond the power of the War Trade Board to confer upon citizens of a country with which the United States was at least technically at war the right to sue in our courts. The Trading with the Enemy Act, supra, under the authority of which the order was made, specifically provided in Sec. 7 (b) that "nothing in this act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the war." The term "end of the war" was defined in Sec. 2 of the same act as meaning "the date of proclamation of exchange of ratifications of the treaty of peace, unless the President shall, by proclamation, declare a prior date, in which case the date so proclaimed shall be deemed to be the 'end of the war' within the meaning of this act."

Appellants cite several cases holding that interest, which did not run during the war, began to run again after the order of the War Trade Board because payment became legally permissible on that date: Guinness v. Miller, 291 Fed. 768; Guinness v. Miller, 299 Fed. 538. This is very different from a holding that an action to enforce payment could have been instituted by virtue of that order. The distinction is clearly brought out in the decision of the Supreme Court of the United States in Guinness v. Hicks, 269 U. S. 71, reversing Guinness v. Miller, 299 Fed. 538, and holding that an obligation which became due prior to April 6, 1917, continued to bear interest during the entire war period. Cases dealing with the question of the date of the determination of the rate of exchange in computing damages may be distinguished in the same manner; they have no bearing upon the right of a national

of an enemy country to sue in our courts during the existence of a state of war, even though that state of war may be merely technical.

Nor can we give our assent to appellants' contention that the war was terminated by the joint resolution of Congress, passed July 2, 1921, (42 Stat. at L. 105, Sec. 1). A state of war cannot be terminated by a mere declaration by one of the belligerents that there is no longer any reason for its continuation. The actual termination of a war is a mutual matter evidenced by a treaty, duly ratified by both parties, and it cannot properly be said that a war has ended until the ratifications have been exchanged. True, the section of the Trading with the Enemy Act which we have quoted, after fixing "the date of proclamation of exchange of ratifications" as the "end of the war" added "unless the President shall by proclamation declare a prior date." This seems to contemplate, for the purposes of that act, the possibility of a proclamation declaring the war ended prior to the exchange of ratifications. No such proclamation was made. The only proclamation was that of November 14, 1921, reciting the exchange of ratifications and declaring the war to have terminated on July 2, 1921. We are not persuaded that this proclamation should be given the retroactive effect contended for; to do so would be equivalent to saying that a right of action, to which the statute would have been a bar within a few days after the end of the war, may, by a proclamation made three days later, be set back more than four months, with the effect that it could never be enforced.

Our conclusion is that the present action was brought within the period of the statute of limitations. It follows that the affidavit of defense was insufficient, at least as to the principal of the debt sued for, and that the judgment of the court below should be affirmed.

Judgment affirmed.