Rotar *v.* Industrial Commission of Ohio.

(Decided February 12, 1931.)

*Messrs. Cerrezin & Wilson* and *Mr. Warren Thomas,* for plaintiff in error.
*Mr. R. R. Zurmehly,* for defendant in error.

Mauck, J.   Alex Rotar, an employee of the General Malleable Company of Warren, Ohio, was killed on July 28, 1919.   On June 12, 1923, Anna Rotar, his widow, made application to the Industrial Commission for compensation, alleging his accidental death in the course of his employment.   Her claim was denied by the commission and an appeal was taken by her to the court of common pleas of Trumbull county.   On the trial of the case in that court a directed verdict was entered for the defendant.   To set aside that verdict and reverse the judgment entered thereon error is prosecuted to this court.

Section 1465-72a of the General Code requires an

application for compensation to be made within two years after the death of the decedent, and it was because of this apparent statutory bar that the trial court directed the verdict and entered the judgment complained of. If the bar imposed by the statute referred to can be avoided, it is by reason of the fact that at the time the decedent was killed his widow was a resident of the Austrian Empire, and that empire and the United States were at the time in a state of war. Of course, the two countries were at war on July 28, 1919, and that state of war continued until July, 1921. The application was made within two years of the formal restoration of peace, and if that fact is decisive the trial court erred in entering the judgment complained of.

A state of war suspends the right of an alien enemy to sue. This is a principle of the law of nations, and is not dependent upon statute—*Hanger* v. *Abbott,* 73 U. S. (6 Wall.), 532, 18 L. Ed., 939, and *Borovitz* v. *American Hard Rubber Co.,* (D. C.), 287 F., 368—and, so long as the right to sue is suspended, the statute of limitations ceases to run. See note in Ann. Cas., 1917C, 213. This principle of international law is unaffected so far as the instant case is concerned by anything in the Trading with the Enemy Act, passed by Congress October 6, 1917 (40 Stats. at L., 411), or the amendatory acts thereof. The seventh section of the act specifically provided that: "Nothing in this Act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the war, except as provided in Section

ten hereof." 40 Stats. at L., 417, Title 50, Section 30-7, U. S. Code.

The exceptions in Section 10 have no relation to the case at bar. Section 8 of the Trading with the Enemy Act specifically provides for a suspension of the running of the statute of limitations on contracts, and generally provides: "That nothing herein contained shall be construed to prevent the suspension of the running of the statute of limitations in all other cases where such suspension would occur under existing law." 40 Stats. at L., 419, Title 50, Section 30-8, U. S. Code.

As we have pointed out, the existing law of nations then prevailing afforded such suspension, and it continued during the war.

The claim of the defendant in error is an ingenious one. It is argued that to the word *enemy* must be given the definition imposed by the Trading with the Enemy Act, and that the term is limited to those residing within the territory of a nation with which the United States was at war, and that the plaintiff in this case was a resident of a particular locality which some time during hostilities seceded from the Austrian Empire and became a part of the new nation, in which our ally Serbia was the controlling power; that Serbia was not an enemy of the United States and after the secession of this province and its incorporation into the new union plaintiff ceased to be an alien enemy. So far as this doctrine depends on definitions found in Section two of the Trading with the Enemy Act (40 Stats. at L., 411, Title 50, Section 30-2, U. S. Code), it is unsound, because that section limits the application of its definition to the purposes of that particular act,

and the act, as we have seen, preserved such rights as against the statute of limitations as theretofore obtained. We cannot say, however, that the status of the plaintiff was changed by any pretended secession. That there was some effort on the part of large numbers of Hungarians and Austrian citizens to divorce themselves from the old governmental authorities is an historical fact. All these efforts, however, were tentative, and their ultimate success was contingent on the outcome of the war. The formal and the informal efforts to secede from Austrian rule and to merge with Serbia were mere gestures made in the heart of a war-ridden land that might or might not succeed if Austria lost the war, but certainly would not succeed if Austria won the war.

It is claimed, however, that the United States recognized this transfer of territory by the Proclamation of February 7, 1919. At that time the Secretary of State recognized the tentative union of certain "peoples," but did not undertake to say that the territory in which Mrs. Rotar was resident was no longer part of Austria. Indeed, Mrs. Rotar was made an alien enemy by the act of Congress declaring war, and as the President alone could not end the war he could not whittle it down to lower dimensions by proclamations, had he so attempted to do. He did not, however, so attempt.

The plaintiff in this case was by virtue of the declarations of war an alien enemy when her husband was killed in July, 1919. She continued to be such alien enemy until the war was terminated by the Act of July 2, 1921 (42 Stats. at L., 105). The plaintiff made her application within two years

thereafter and was consequently within the time to which her rights had been extended. *Borovitz* v. *American Hard Rubber Co., supra; Siplyak* v. *Davis, Dir. Gen.,* 276 Pa., 49, 119 A., 745; *Zeliznik* v. *Lytle Coal Co.,* 82 Pa. Super. Ct., 489.

The trial court was in error in holding that the claim of the plaintiff was barred. The judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

FARR and MIDDLETON, JJ., concur.

MAUCK and MIDDLETON, JJ., of the Fourth Appellate District, sitting by designation in the Seventh Appellate District.